IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(CHARLESTON DIVISION)

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**, a Minnesota Corporation,

    Plaintiff,

v.

**MW BUILDERS, INC**., a Missouri corporation, **EDGEWOOD SUMMIT, INC.**, a West Virginia corporation, **PUCCIANO & ENGLISH, INC.**, a Georgia corporation, **MARYLAND CASUALTY COMPANY**, a Maryland corporation, and **KANSAS INSURANCE GUARANTY ASSOCIATION**,

    Defendants.

Case No. 2:10-0747

## COMPLAINT FOR DECLARATORY RELIEF

### I.  INTRODUCTION

1.  This is an action seeking a declaratory judgment pursuant to 28 U.S.C. 2201, instituted by St. Paul Fire and Marine Insurance Company, as the insurer for M W Builders of Kansas, Inc., under a Contractors Commercial General Liability Protection Policy held by MMC Corp., wherein MW Builders, Inc. (formerly known as M W Builders of Kansas, Inc.) is a named insured.  St. Paul seeks a declaratory ruling that it is not required to indemnify M W Builders of Kansas, Inc. for any award or judgment rendered against M W Builders of Kansas, Inc. in an arbitration proceeding instituted against it by Edgewood Summit, Inc. before the American Arbitration Association.

## II.     PARTIES

2.  The Plaintiff, St. Paul Fire and Marine Insurance Company (hereafter "St. Paul"), is a Minnesota corporation.

3.  The Defendant, Edgewood Summit, Inc. (hereafter "Edgewood"), is a West Virginia corporation.

4.  The Defendant, MW Builders, Inc., previously known as M W Builders of Kansas, Inc. (hereafter "MW Builders"), is a Missouri corporation.

5.  Maryland Casualty Company (hereafter "Maryland Casualty") is an insurance company incorporated in the State of Maryland.

6.  The Kansas Insurance Guaranty Association (hereafter "Kansas Insurance") is a statutory-created guaranty company established pursuant to K.S.A. 40-2901 to provide for the payment of covered claims to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.

7.  The Defendant, Pucciano & English, Inc., was the architect for the at-issue Edgewood Summit retirement facility and is a Georgia corporation.

## III.    JURISDICTION & VENUE

8.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332.

9.  The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

10. There is complete diversity of citizenship between the Plaintiff and all the named Defendants.

11. The construction of the Edgewood Summit retirement facility giving rise to this action occurred in Charleston, West Virginia, giving venue to this Court pursuant to 28 U.S.C. 1391.

### IV.     GENERAL ALLEGATIONS

12.     St. Paul insured MW Builders under a Contractors Commercial General Liability Protection policy of insurance held by MMC Corp. with a policy period beginning March 1, 1999, and renewing annually until March 1, 2004.

13.     Upon information and belief, Maryland Casualty provided general liability insurance coverage for MW Builders for a policy period beginning in 1995 through 1997 and from 2004 through 2005.

14.     Upon information and belief, National Indemnity Company (hereafter "Reliance") provided general liability insurance coverage for MW Builders from 1997 through 1999. Reliance has been liquidated and, upon information and belief, the Kansas Insurance Guaranty Association had been providing coverage to MW Builders for the years of 1997 through 1999.

15.     On May 1, 1992, MW Builders entered into a contract with Edgewood as the general contractor for the construction of Edgewood Summit, a senior living community, to be owned by Edgewood and located in Charleston, West Virginia.

16.     MW Builders began construction of the Edgewood Summit retirement facility in 1993 and completed construction in 1995.

17.     On March 16, 2005, Edgewood filed a demand for arbitration with the American Arbitration Association against MW Builders, alleging a contractor, construction dispute involving "latent floor support failures" and "latent exterior wood treatment failures caused by improper materials and sealants."  (See Demand For Arbitration attached hereto as **Exhibit A**).

18.     On or about April 21, 2010, Edgewood Summit filed an Amended Demand for Arbitration with the American Arbitration Association against MW Builders alleging "latent floor support failures caused by improper construction.  Latent exterior wood treatment failures

3

caused by improper materials and sealants.  Use of improper lumber." (See Amended Demand For Arbitration attached hereto as **Exhibit B**).

19. The Amended Demand for Arbitration asserts that the dollar amount of the claim is One Million Six Hundred Thousand Dollars ($1,600,000.00).

20. Edgewood Summit, Inc. has also filed an Amended Demand For Arbitration against Pucciano & English, Inc. which arbitration has been consolidated with the Edgewood arbitration claim against MW Builders.  (See Amended Demand For Arbitration attached hereto as **Exhibit C**).

21. St. Paul is providing MW Builders with a defense to the arbitration proceeding, subject to a reservation of rights under its policy.

22. In the arbitration, Edgewood claims damages arising from alleged faulty construction of the facility for which MW Builders acted as the general contractor.

23. Edgewood claims damages as follows:

(1) Damage to the wood and trim around the balcony structures of the facility arising from the use of improper materials and poor quality construction.

(2) Alleged floor support failures on two wings of the facility occasioned by faulty construction and/or design.

(3) The failure of the exterior wood siding and the wood trim.

### V.   COUNT I

24. This Defendant incorporates its allegations in paragraphs 1 through 23 of its Complaint for Declaratory Relief as if fully set forth herein.

23. St. Paul insures MW Builders under the following Contractors Commercial General Liability Protection Policies:

- Policy No. KK08000635, with a policy period of 03/01/99 to 03/01/00 (This Policy attached hereto as **Exhibit D**);

- Policy No. KK08000752, with a policy period of 03/01/00 to 03/01/01;

- Policy No. KK08000856, with a policy period of 03/01/01 to 03/01/02;

- Policy No. KK08000967, with a policy period of 03/01/02 to 03/01/03; and

- Policy No. KK08001054, with a policy period of 03/01/03 to 03/01/04.

24. The policies provide Two Million Dollars ($2,000,000.00) in Products and Completed Work Limits and One Million Dollars ($1,000,000.00) per event, limits of coverage.

25. The Insuring Agreement of St. Paul's Contractors Commercial General Liability Policy insuring MW Builders, provides as follows:

> **What This Agreement Covers**
>
> **Bodily injury and property damage liability.**
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage . . . that:
>
> • happens while this agreement is in effect; and
> • is caused by an event.
>
> \* \* \*

26. "Property damage" is defined under the policy to mean:

> • physical damage to tangible property of others, including all resulting loss of use of that property; or
>
> • loss of use of tangible property of others that isn't physically damaged.
>
> \* \* \*
>
> We'll consider all loss of use of:
>
> • damaged tangible property to happen at the time of the physical damage which caused it; and

5

> • undamaged tangible property to happen at the time of the event which caused it.

27.     The policy defines "event" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28.     The damages sought by Edgewood against MW Builders do not allege "property damage" caused by an "event" as those terms are defined under the policy and, therefore, there is no coverage or duty to defend MW Builders under St. Paul's policies of insurance.

## VI.     COUNT II

29.     This Defendant incorporates its allegations in paragraphs 1 through 28 of its Complaint for Declaratory Relief as if fully set forth herein.

30.     St. Paul's policy insuring MW Builders contains exclusions which provide:

> **Exclusions – What This Agreement Won't Cover**
>
> * * *
>
> **Control of property.**  We won't cover property damage to the following property:
>
> * * *
>
> • That particular part of real property being worked on by or for you if such property damage results from your work.
>
> • That particular part of any property which must be restored, repaired, or replaced because your work was incorrectly performed on it.  But we won't apply this exclusion part to property damage that results from your completed work.
>
> * * *
>
> **Damage to your products or completed work.**  We won't cover property damage to any of your products that's caused by the product itself or by any of its parts.
>
> Nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts.  But we won't apply this exclusion part if:

6

• this agreement provides completed work coverage; and

• the damaged completed work, or the completed work that causes the property damage, was done for you by others.[1]

\* \* \*

**Impaired property.** We won't cover property damage to impaired property, or to property which isn't physically damaged, that results from:

• your faulty or dangerous products or completed work; or

• a delay or failure in fulfilling the terms of a contract or agreement.[2]

But we won't apply this exclusion to the loss of use of property, other than your products or completed work, that results from sudden and accidental physical damage to your products or completed work after they've been put to their intended use.[3] . . .

"Impaired property" means tangible property, other than your products or completed work, that can be restored to use by nothing more than:

• an adjustment, repair, replacement or removal of your products or completed work which forms a part of it;[4] or

• your fulfilling the terms of a contract or agreement.

\* \* \*

**Product recall.** We won't cover any loss, cost or expense that:

• is incurred by you or others;

---

[1] This clause was changed in the 2002-2003 and 2003-2004 policies to indicate, "your completed work that's damaged, or your completed work that causes the property damage, was done for you by others."

[2] These two (2) clauses were changed in the 2002-2003 and 2003-2004 policies to indicate three (3) clauses: "your products that are faulty or dangerous; your completed work that is faulty of dangerous; or a delay or failure in fulfilling the terms of a contract or agreement."

[3] This paragraph was changed in the 2002-2003 and 2003-2004 policies to indicate the following: "But we won't apply this exclusion to the loss of use of property, other than your products or your completed work, that results from sudden and accidental physical damage to: your products after they've been put to their intended use; or your completed work after it has been put to its intended use."

[4] This clause was changed in the 2002-2003 and 2003-2004 policies to indicate, "an adjustment, repair, replacement, or removal of your products, or your completed work, that forms a part of such tangible property; or . . ."

    • results from the recall, removal or withdrawal of impaired property, or your products or completed work, from the market or from use by any person or organization for any reason.

    Nor will we cover any loss, cost, or expense that is incurred by you or others and results from the:

    • loss of use;

    • adjustment, inspection, repair;

    • replacement; or

    • disposal; of such property, products or completed work.

* * *

31.    The damages sought in the Edgewood arbitration against MW Builders are damages which are excluded by the above exclusions in the St. Paul policy.

### VII.   COUNT III

32.    This Defendant incorporates its allegations in paragraphs 1 through 31 of its Complaint for Declaratory Relief as if fully set forth herein.

33.    The Insuring Agreement contained in the St. Paul policy only covers "property damage" that "happens while this agreement is in effect."

34.    To the extent any of the "property damage" as alleged in the arbitration proceedings against MW Builders occurred when the St. Paul policy insuring MW Builders was not in effect, then such property damage would not be covered by the insuring clause of the St. Paul policies.

### VIII.   COUNT IV

35.    This Defendant incorporates its allegations in paragraphs 1 through 34 of its Complaint for Declaratory Relief as if fully set forth herein.

36. To the extent MW Builders knew or had reason to know that there was a substantial probability that it would suffer or had already suffered a loss by virtue of property damage to the Edgewood Summit retirement facility prior to obtaining insurance with St. Paul in March of 1999, then coverage for said loss would be barred by the known loss doctrine.

## IX.    PRAYER FOR RELIEF

WHEREFORE, St. Paul respectfully requests this Court to issue a declaratory ruling that there is no coverage afforded for the allegations contained in the arbitration proceeding initiated by Edgewood Summit, Inc. against M W Builders of Kansas, Inc. under the St. Paul policy insuring MW Builders, Inc. (formerly known as M W Builders of Kansas, Inc.); to the extent there is coverage, to delineate the scope of coverage as afforded under said policy and to allocate and determine the limits of coverage at-issue and the allocation of covered damages to the insurers who insured MW Builders of Kansas, Inc. over the policy periods for which the alleged property damage occurred.

Respectfully Submitted,

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

Plaintiff,

By Counsel

/s/ *Peter G. Zurbuch*
PETER G. ZURBUCH
WV State Bar No. 5765
BUSCH, ZURBUCH & THOMPSON, PLLC
P. O. Box 1819
Elkins, WV  26241
(304) 636-3560